IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-372-FL

| | | |
|---|---|---|
| PEARL O. MADRIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MERRICK GARLAND, US Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon plaintiff's motion for a preliminary injunction (DE 2), defendant's motion to dismiss plaintiff's complaint for lack of jurisdiction and for failure to state a claim (DE 8), a document plaintiff labels as a "request for expedited hearing or decision complaint [sic]" (DE 16), and another that plaintiff denominates as a "request for expedited hearing or decision motion for injunction [sic]" (DE 17), which the court construes as motions for expedited consideration of her motion for a preliminary injunction. The issues raised have been briefed fully, and in this posture the motions are ripe for ruling. For the following reasons, defendant's motion is granted, and plaintiff's motions are denied.

## STATEMENT OF THE CASE

Plaintiff began this action pro se by filing a complaint and a motion for a preliminary injunction on July 11, 2023, asserting that defendant's appointment of Jack Smith ("Smith") as special counsel is unconstitutional, and that Smith's activities in that role have illegally subverted

plaintiff's right to vote for her "candidate of choice[,] Donald Trump." (Compl. (DE 1) 5).[1] The exact parameters of plaintiff's requested injunctive relief vary across her filings, but broadly, she requests an injunction declaring Smith's appointment unconstitutional and barring defendant from appointing any other special counsel to prosecute Donald Trump ("Trump"). (See Mem. Supp Mot. Prelim. Inj. (DE 3) 15; Reply to Def's Mot. Dismiss (DE 14) ("Opp'n Mot. Dismiss") 13).[2]

Defendant filed the instant motion dismiss on September 11, 2023, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), relying upon his November 18, 2022, order appointing Smith as special counsel (the "appointment order"). Defendant also filed a response in opposition to plaintiff's preliminary injunction motion, relying upon the same.

Plaintiff responded in opposition to defendant's motion and in support of her preliminary injunction motion, relying upon the same appointment order and proof of service forms.[3] Plaintiff then filed the instant requests for expedited decision on her complaint and injunction motion.

## STATEMENT OF FACTS

In her complaint, plaintiff alleges she is a resident of Raleigh, North Carolina, and that:

> The US Attorney General violated the US Constitutional [sic] by appointing Jack Smith as Special Counsel without the statutory authority to do so. Mr. Smith is illegally conducting prosecutorial activities that has [sic] resulted in criminal charges against my candidate of choice Donald Trump. The conduct of the Attorney General has subverted my right to vote without unconstitutional

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[2] Plaintiff refers to her requested relief as a preliminary injunction in some filings, and as a temporary restraining order in others. These two forms of relief are distinct and governed by different procedural rules. See generally Fed. R. Civ. P. 65. Despite this inconsistency, the court construes plaintiff's requested relief as a preliminary injunction, because her complaint and initial motion use that terminology, and because some of her filings request relief that extends beyond the permissible duration of a temporary restraining order. (See Fed. R. Civ. P. 65(b)(2) (limiting the duration of a temporary restraining order to a maximum of 28 days); Opp'n Mot. Dismiss 13 (requesting a temporary restraining order effective until "the day after the 2024 election")).

[3] Plaintiff also moved for an entry of default against defendant on September 12, 2023, which she withdrew on September 28, 2023.

1

interference and has likely coerced me to involuntarily withhold my vote for the candidate of my choice.

(Compl. 5).[4]

## COURT'S DISCUSSION

A.     Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[5] Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

B.     Analysis

Defendant argues that plaintiff lacks Article III standing, due to lack of any concrete or particularized injury, which requires dismissal of her complaint and denial of her request for an injunction. The court agrees.[6]

Because standing under Article III of the Constitution implicates a federal court's subject matter jurisdiction, the court cannot reach the merits of a dispute without confirming that standing

---

[4]     Plaintiff makes additional factual assertions in her arguments in her briefs, which the court will address in the analysis herein.

[5]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

[6]     Because the court agrees that plaintiff lacks standing, requiring dismissal pursuant to Rule 12(b)(1), the court does not reach defendant's additional grounds for dismissal.

2

exists.  See PEM Entities LLC v. Cnty. of Franklin, 57 F.4th 178, 182 (4th Cir. 2023).  The court therefore addresses standing before all other issues.

"The irreducible constitutional minimum of standing contains three elements": an injury that is "concrete and particularized"; a causal connection between the injury and the conduct complained of; and likelihood that the injury will be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The first element requires "an invasion of a legally protected interest[,]" id. at 560, that is "concrete and particularized and actual or imminent, not conjectural or hypothetical."  Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016).  An allegation of a future injury suffices if the threatened injury is "certainly impending" or if a substantial risk exists that the harm will occur.  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014).

The second element, traceability, requires a "causal connection between the injury and the conduct[,]" such that the injury is not the "result of the independent action of some third party not before the court."  Lujan, 504 U.S. at 560.  In other words, standing is defeated if "third persons not party to the litigation must act in order for an injury to arise or be cured."  Doe v. Va. Dep't of State Police, 713 F.3d 745, 755 (4th Cir. 2013).

Impairment of the right to vote can constitute an injury sufficient to confer standing if plaintiffs "allege facts showing disadvantage to themselves as individuals[.]"  Baker v. Carr, 369 U.S. 186, 206 (1962) (emphasis added).  However, such injury must be individual and specific to the plaintiff, not a mere "generalized grievance about governmental conduct of which he or she does not approve."  Gill v. Whitford, 138 S. Ct. 1916, 1930 (2018).

In factual support of her claim, plaintiff asserts only that defendant's actions are unconstitutional, which has "subverted [plaintiff's] right to vote without unconstitutional

3

interference and has likely coerced [plaintiff] to involuntarily withhold [her] vote for the candidate of [her] choice." (Compl. 5) (emphasis added). This statement is a bare, conclusory assertion of future harm that does not plausibly demonstrate that plaintiff has suffered an injury, or that one is "certainly impending[.]" Driehaus, 573 U.S. at 158; see, e.g., Tsao v. Captiva MVP Rest. Partners, LLC, 986 F.3d 1332, 1343 (11th Cir. 2021) (holding that "vague, conclusory allegations" of future harm failed to create standing, even at Rule 12 stage); Brittian v. Extended Stay Am., 3:22-cv-663-MOC, 2023 WL 3111791, at *3 (W.D.N.C. Apr. 26, 2023) (holding that plaintiff's allegation that she "has been, or may be, subject to" illegal practices was "conclusory" and did not support standing).

Plaintiff advances several arguments asserting her standing, which are unavailing. Plaintiff contends that she has standing to challenge Smith's appointment because it was inherently unconstitutional. (See Opp'n Mot. Dismiss 3). But standing and the merits of a claim are separate inquiries. See Warth v. Seldin, 422 U.S. 490, 500 (1975). Thus even assuming without deciding that plaintiff is correct on the merits, seeking "to have the Judicial Branch compel the Executive Branch to act in conformity with the [Constitution]" is "an interest shared by all citizens" and therefore "an abstract injury" insufficient to create standing. Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 217–21 (1974); see also Ex Parte Levitt, 302 U.S. 633, 636 (1937).

Plaintiff also quotes Baker and Whitford for the proposition that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." (Opp'n Mot. Dismiss 3) (emphasis added). However, plaintiff takes these cases out of context, and overlooks the key language: "as individuals." Merely alleging a dissatisfaction with political action that had a tangential or potential effect on voting does not obviate standing requirements.

For example, Whitford addressed allegations that the Wisconsin legislature had unconstitutionally gerrymandered the state's legislative districts. Whitford, 138 S. Ct. at 1923–24. The court concluded that four individual voters had adequately shown standing at the pleading stage by alleging that they lived in districts that the legislature had already gerrymandered, which affected their right to vote and constituted a concrete injury. See id. at 1923, 1929–32. But the court also concluded that the plaintiffs had failed to sustain their burden to show standing through trial, because none ultimately produced evidence that he or she in fact lived in a gerrymandered district. See id. at 1932–34. Further, the court held that a mere abstract interest in the ultimate result of a particular election is "not an individual legal interest[.]" Id. at 1932. Baker rested upon similar allegations of unlawful vote dilution that had already occurred to the plaintiffs, see Baker, 369 U.S. at 205–209, as did another of plaintiff's citations, Reynolds v. Sims, 377 U.S. 533 (1964). In contrast to these individual injuries, plaintiff pleads an abstract dissatisfaction, which Whitford rejects. See Whitford, 138 S. Ct. at 1931–32.

Plaintiff additionally suggests that Smith has infringed Trump's First Amendment rights, which grants her standing. (See Opp'n Mot. Dismiss 4).[7] Generally, however, a plaintiff may not sue to vindicate the legal rights or interests of others. See Md. Shall Issue, Inc. v. Hogan, 971 F.3d 199, 214 (4th Cir. 2020). This rule is "not absolute," but plaintiff has not pleaded facts demonstrating that application of any exception is proper. See id. at 215–16.

Plaintiff further argues that the importance of the right to vote and of the First Amendment support her standing. (See Opp'n Mot. Dismiss 3–6). This argument is unavailing because the importance of the interests alleged to be at stake does not affect a plaintiff's obligation to show

---

[7] Plaintiff does not make this argument explicitly, but she discusses alleged violations of Trump's First Amendment rights in the section of her brief that addresses standing. (See Opp'n Mot. Dismiss 4). These statements therefore conceivably imply this argument.

5

standing.  See, e.g., Warth, 422 U.S. at 500; N.C. State Conference of the NAACP v. Raymond, 981 F.3d 295, 301–02 (4th Cir. 2020) (examining standing before proceeding to merits of injunctive relief in voting rights case); Buscemi v. Bell, 964 F.3d 252, 258, 266 (4th Cir. 2020) (affirming order dismissing voting rights claim for lack of standing); Democracy N.C. v. N.C. State Bd. of Elections, 476 F. Supp. 3d 158, 180–90, 192 (M.D.N.C. 2020) (discussing standing before moving to the merits of injunctive relief in voting rights case); O'Connell v. City of New Bern, N.C., 353 F. Supp. 3d 423, 428–30 (E.D.N.C. 2018) (denying preliminary injunction in First Amendment case for lack of standing).

Finally, plaintiff cites numerous cases for the contention that improperly influencing political processes inherently injures voters, and that Smith's alleged effect on the 2024 election is such an influence.  (See Opp'n Mot. Dismiss 5–6).  Much of plaintiff's argument consists of quoting hortatory language about the importance of the right to vote.  Nonetheless, the court has examined all of plaintiff's cases carefully.  Each is inapposite, because each plaintiff possessed standing, in contrast to plaintiff in the instant case.

For example, plaintiff cites to Calhoon v. Harvey, 379 U.S. 134, 143 (1964) (Stewart, J., concurring).  Harvey considered a challenge to a labor union chapter's bylaws that significantly limited members' rights to nominate candidates for union offices, in alleged contravention of a federal statute.  See id. at 135–37 (majority opinion).  Although the Court did not address standing, each plaintiff union member suffered an injury to his personal ability to nominate others in an upcoming election.  See id. at 135–38.

Plaintiff cites to the concurring opinion in Harvey, which in turn cites to cases involving racially segregated primary elections.  However, in each case, the plaintiff had plainly suffered an injury, because each was an eligible voter denied the right to cast a primary ballot on grounds of

6

race.  See Smith v. Allwright, 321 U.S. 649, 650–51 (1944) (denial under political party bylaw); Nixon v. Herndon, 273 U.S. 536, 539 (1927) (denial under Texas state statute).[8]

Plaintiff also invokes several cases concerning ballot eligibility.  Lubin v. Panish, 415 U.S. 709 (1974), involved a California statute that required payment of a fee to appear on a ballot, but which provided no exceptions or alternative procedures, thus prohibiting all indigents from running for office.  See id. at 710, 718–19.  The plaintiff there suffered an injury because he attempted to run for Los Angeles County Supervisor, but could not appear on the ballot solely because he could not pay the filing fee.  Id. at 710–11.  Another case cited by plaintiff, McDaniel v. Paty, 435 U.S. 618, 644 (1978) (White, J., concurring), involved the same principle: a religious minister who actually ran for office had standing to challenge a Tennessee statute barring all clergy from the particular office.  See id. at 620–21 (majority opinion).  Nader 2000 Primary Comm., Inc. v. Hechler, 112 F. Supp. 2d 575 (S.D.W. Va. 2000) depended upon the same logic: candidates and political parties who actually attempted to appear on a ballot had standing to challenge West Virginia statutes limiting or barring registration.  Bachur v. Democratic Nat'l Party, 666 F. Supp. 763 (D. Md. 1987), rev'd on other grounds, 836 F.2d 837 (4th Cir. 1987), involved the same reasoning.  A primary voter who actually voted had standing to challenge party rules restricting his choice of candidates, though notably, the Fourth Circuit reversed the district court on the merits by concluding that the rules had not impaired the plaintiff's right to vote.  See Bachur, 836 F.2d at 840–43.

---

[8] Plaintiff's quotation from Harvey also cites to United States v. Classic, 313 U.S. 299 (1941).  But Classic involved a federal criminal indictment, see id. at 307–08, and the federal government possesses inherent standing as sovereign to enforce valid criminal laws.  See, e.g., Roberson v. United States, No. 2:19cv473-MHT, 2019 WL 4927055, at *2 (M.D. Ala. Aug. 12, 2019) (collecting cases); see also United States v. Daniels, 48 F. App'x 409, 418 (3d Cir. 2002) (describing standing-based objection to indictment as "frivolous").

Plaintiff cites two additional cases that involved political speech and advocacy. The plaintiffs in Buckley v. Valeo, 424 U.S. 1 (1974) possessed standing to challenge future regulations of the Federal Election Commission, which were impending and "all but certain." See id. at 115–18. Similarly, in West Virginians for Life, Inc. v. Smith, 919 F. Supp. 954 (S.D.W. Va. 1996), plaintiffs possessed standing because they had shown an immediate intent to engage in political advocacy that would violate West Virginia statutes carrying criminal penalties. See id. at 955–57.

Finally, in Elrod v. Burns, 427 U.S. 347 (1976), the plaintiffs all had standing because the defendant had already threatened some plaintiffs with termination of employment on impermissible grounds, and the other plaintiffs had been forced to take concrete action to avoid that threat. See id. at 350, 373–74.

Accordingly, in all these cases, the plaintiff suffered an actual injury because he or she actually attempted personally to vote, run for office, nominate another, engage in advocacy, or register to appear on a ballot, but a state, party, or union blocked the attempt. By contrast, plaintiff has not alleged that she has attempted to engage in any political action, or that any conduct by defendant threatens a certainly impending or substantially likely injury to her right to engage in future political activity.

Thus, plaintiff has not demonstrated an injury in fact. The merits of her claim are irrelevant to the question of standing, her alleged injury is a mere abstract disagreement with governmental action, she lacks third-party standing to sue to vindicate Trump's rights, and she has incurred no personal impairment of her right to conduct any political activity.

Plaintiff therefore fails to establish standing. The court therefore cannot, and does not, address the merits of her request for an injunction. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–95; PEM Entities, LLC, 57 F.4th at 182.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED, and plaintiff's action is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Because the court lacks subject matter jurisdiction to consider plaintiff's claims, plaintiff's motion for preliminary injunction (DE 2) is DENIED; and plaintiff's remaining motions (DE 16, 17) are TERMINATED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 28th day of December, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge